UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ABBIE ROSE and DAVID BECERRA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>IQVIA HOLDINGS INC., a Delaware corporation, IQVIA DIGITAL INC., a Delaware corporation, and IQVIA INC., a Delaware corporation,<br><br>Defendants. | No. 2:26-cv-01492 WBS SCR<br><br><u>MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS</u> |

----oo0oo----

Defendants IQVIA Holdings Inc., IQVIA Digital Inc., and IQVIA Inc. ("IQVIA") move to dismiss plaintiffs' first amended complaint and putative class action. (Mot. (Docket No. 28).) Plaintiffs bring six causes of action under California law against IQVIA arising from its alleged collection and sharing of plaintiffs' sensitive medical information through one of its community websites, Drugs.com, operated through IQVIA's

Healthcare Communications Network ("HCN"). (First Am. Compl. ("FAC") ¶¶ 97-99 (Docket No. 25).) IQVIA argues for full dismissal as plaintiffs' description of their interactions, searches, and transmitted information on Drugs.com are impermissibly vague and fail to state a claim upon which relief can be granted. (Mot. at 6.) IQVIA also requests that the court, in deciding its motion, either incorporate by reference or take judicial notice of three exhibits containing three copies of Drugs.com's privacy policy captured at different time intervals through a third-party internet archive service, the Wayback Machine. (Req. (Docket No. 29.))

I. Legal Standard

A Rule 12(b)(6) motion must "be read in conjunction with Rule 8(a), which requires a 'short and plain statement of the claim showing that a pleader is entitled to relief,' in order to give the defendant 'fair notice of what the claim is and the grounds upon which it rests.'" R.C. v. Walgreen Co., 733 F. Supp. 3d 876, 887 (C.D. Cal. 2024) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The complaint must allege facts such that each claim is facially plausible. Id. at 570. In evaluating the motion, the court must accept allegations as true and construe them in the light most favorable to the plaintiffs. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). However, "[t]he court need not take legal conclusions as true merely because they are cast in the form of factual allegations." Cousin v. Sharp Healthcare, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) (citing Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987)).

II. Judicial Notice and Incorporation by Reference

IQVIA requests that the court either incorporate by reference or take judicial notice of three copies of Drugs.com's privacy policy, archived via the third-party Internet Wayback Machine. (Req.) For the following reasons, the court denies IQVIA's request.

A court generally "may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)." D'Angelo v. FCA US, LLC, 726 F. Supp. 3d 1179, 1190 (S.D. Cal. 2024) (quoting Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir. 2018)). However, "[t]here are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." Id. IQVIA argues for both; the court takes each in turn.

First, incorporation by reference is "a judicially-created doctrine that treats certain documents as though they are part of the complaint itself." Id. at 1002. A court properly incorporates documents by reference where no party questions the document's authenticity and "the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." Id. at 1002 (quoting United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003). However, if a document "merely creates a defense to the well-[pleaded] allegations in the complaint, then that document did not necessarily form the basis of the complaint." Id. "[M]aterials that the complaint did not reference at all," moreover, will rarely be incorporated. Turner v. Nuance Commc'ns, Inc., 735 F. Supp. 3d 1169, 1180 (N.D. Cal. 2024) (quoting Khoja, 899 F.3d at 1002).

IQVIA argues that incorporation is proper because plaintiffs' claims "rest completely on their alleged visits" to Drugs.com and, accordingly, any claim of non-consensual data collection turns on the terms of the Drugs.com privacy policy. (Req. at 2.) Plaintiffs, however, did not rely upon or even name Drugs.com's privacy policy in their FAC. (See FAC ¶¶ 121-22.) Instead, plaintiffs argue that IQVIA intercepted their communications with Drugs.com, and that they were unaware of, and did not consent to, any third-party (i.e., by IQVIA) data collection or transmission. See id. ¶¶ 117-19, 121-22. An unmentioned privacy policy cannot colorably form the basis of any of plaintiffs' five remaining claims that stem from third-party interception and collection. IQVIA is therefore attempting to create a "defense to the well-[pleaded] allegations in the complaint" through a consent argument to the challenged collection. Khoja, 899 F.3d. at 1002; see also Turner, 735 F. Supp. 3d at 1181 (refusing to "incorporate documents to find consent when the documents were not even mentioned in the complaint"). The court accordingly declines to incorporate the proposed exhibits.

Second, judicial notice is appropriate where a fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). However, "[j]ust because [a] document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." Khoja, 899 F.3d at 999. "On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's

opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'" Lee v. City of L.A., 250 F.3d 668, 690 (9th Cir. 2001) (quoting S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd., 181 F.3d 410, 426–27 (3d Cir. 1999).

Although lower courts have accepted undisputed exhibits from the Wayback Machine as proper for judicial notice, plaintiffs here do dispute the exhibits' accuracy and argue for "foundation from someone with knowledge of the [Wayback Machine's] processes before relying on them." (Resp. to Req. at 4 (Docket No. 31).) See Zhang v. Twitter Inc., No. 23-cv-00980-JSC, 2023 WL 5493823, at *3 (N.D. Cal. Aug. 23, 2023). In Matthews v. Apple, Inc., the district court found it could not take judicial notice where "the authenticity of the Media Terms and iCloud Terms" were in dispute and such terms were not referenced in the complaint. 769 F. Supp. 3d 999, 1007 (N.D. Cal. 2024). Similarly, in Lesh v. Cable News Network, Inc., the court declined to take judicial notice of screenshots from the Wayback Machine where plaintiff disputed authenticity, and the screenshots were provided by "a third-party website that is not hosted by CNN." 767 F. Supp. 3d 33, 43 (S.D.N.Y. 2025). The court instead required testimony from a representative attesting to the authenticity. Id.

Here, plaintiffs dispute the accuracy of the privacy policy exhibits as unverified third-party sources and seek authentication of the Wayback Machine exhibits beyond a defense counsel declaration. (Resp. to Req.) Accordingly, the court

declines to take judicial notice of the three privacy policy exhibits.

III. Plaintiffs' CIPA § 638.51 Claim

During the pendency of this case, California enacted a law barring CIPA § 638.51(a) lawsuits by any party other than the California Attorney General, applied "retroactively to any pending claim in an action commenced within two years before the operative date" of the law. CA LEGIS 976 (2026), 2026 Cal. Legis. Serv. Ch. 976 (S.B. 690). Plaintiffs, in response, voluntarily dismissed their § 638.51(a) claim. (Docket No. 32.)

IV. Allegations Regarding Plaintiffs' Health Information

Plaintiffs' five remaining claims all center on IQVIA's collection and transmission of sensitive medical information using various tracking technologies. (FAC at 2-3.) IQVIA argues for dismissal on the grounds that plaintiffs' allegation that it collected their sensitive medical information is conclusory. Plaintiffs, IQVIA contends, have not provided any concrete facts concerning the information itself, and they have not alleged any details "about the specific health or drug information they supposedly searched for or webpages viewed on Drugs.com." (Mot. at 7.) The court agrees.

The FAC alleges that "Plaintiff Rose entered specific search terms into [Drugs.com] regarding her health . . . [and] used the website's pill identifier feature and entered search queries regarding prescribed medications." (FAC ¶ 121.) The FAC makes nearly identical allegations for Becerra. Id. ¶ 122. Neither Becerra nor Rose were registered users of drugs.com with individual accounts; their searches were conducted in the public

search bar. (FAC ¶¶ 121-22.)

Lower courts in this Circuit have consistently found privacy claims based on the collection of sensitive health information via internet browsing insufficient where plaintiffs fail to describe the actual content with specificity. In Beltran v. Drs. Med. Ctr. of Modesto, the district court found a complaint insufficient where plaintiffs failed to "specify the types of health conditions and doctors Plaintiffs actually searched for on the Website" and instead "[provided] examples of health conditions Website users may search for" without specifying "the types of health conditions and doctors Plaintiffs actually searched for." No. 2:23-CV-01670-DC-CKD, 2025 WL 1635467, at *5 (E.D. Cal. June 9, 2025). Similarly, in Cousin, a complaint that "[provided] an example of a search by a hypothetical patient" but failed "to state what information they each provided . . . via their browsing activity, that was . . . disclosed to Meta" was inadequate. 681 F. Supp. 3d at 1123.

In Harrill v. Emanuel Med. Ctr., the plaintiff's failure to "identify . . . what information [plaintiff] provided to Defendants via her browsing activity" by not enumerating the "the types of health conditions and doctors [p]laintiff actually searched for on the Website" was likewise insufficient. No. 2:23-cv-01672-DC-CKD, 2025 WL 1635428, at *4 (E.D. Cal. June 9, 2025). The plaintiff had failed to "describe the types of searches she conducted or the webpages she viewed." Id.

Here, plaintiffs similarly fail to specify which terms, conditions, prescriptions, or webpages they viewed or provided. Instead, they offer a hypothetical Drugs.com interaction that

could amount to the collection of sensitive medical information, demonstrating through screenshots a search for the prescription medication Lorazepram. (FAC at 28-39.) This hypothetical cannot provide the concrete facts necessary to ground plaintiffs' claims. Plaintiffs "do not explain what specific [health information] they provided to Defendant. Plaintiffs cannot maintain their theory of the case absent this factual support." Doe v. Davita Inc., No. 23-cv-01424-AJB-BLM, 2024 WL 1772854, at *2 (S.D. Cal. Apr. 24, 2024).

Plaintiffs alternatively request leave to amend their complaint to "identify the medications and conditions they researched in an amended pleading." (Opp'n to Mot. at 6 (Docket No. 30).) "Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading." Cousin, 681 F. Supp. 3d at 1123 (citing Knappenberger v. City of Phoenix, 566 F.3d at 942 (9th Cir. 2009). IQVIA's motion to dismiss will be granted, with plaintiffs permitted to amend their pleading to allege with specificity the content that IQVIA collected.

V. Other Grounds for Dismissal

For the foregoing reason alone, the court must dismiss plaintiffs five remaining claims. However, since plaintiff will be given leave to amend, the court now proceeds to address the other grounds urged by defendant concerning the sufficiency of plaintiffs' allegations on each of those claims so that plaintiffs may address any deficiencies in an amended complaint. Beltran, 2025 WL 1635467, at *6.

A. CIPA Cal. Penal Code § 631(a) (Count I)

Plaintiffs can sue under CIPA § 631(a) for the unauthorized interception of the content of a user's communication to third parties. Tanner, v. FCA US LLC, No. 2:26-CV-1475 WBS CKD, 2026 WL 2754590, at *4 (E.D. Cal. Sept. 17, 2026) (collecting cases). A "plaintiff must allege (1) an intentional act; (2) interception or eavesdropping; and (3) that the contents of a communication were intercepted or eavesdropped." Tanner, 2026 WL 2754590, at *4 (citing Garcia v. Truist Fin. Corp., 825 F. Supp. 3d 1149, 1166-67).

Under CIPA § 631(a), "contents" are "the intended [messages] conveyed by the communication" as opposed to "record information regarding the characteristics of the message." King 2025 WL 1635419, at *3-4 (E.D. Cal. June 9, 2025). To differentiate, courts analyze "how much information would be revealed" by the tracking and disclosure. Hammerling v. Google LLC, 615 F. Supp. 3d 1069, 1092 (N.D. Cal. 2022). "Courts dismiss CIPA § 631(a) claims when the data collected are routine identifiers such as 'keystrokes, mouse clicks, pages viewed ... duration of the visit, [and] [p]laintiff's IP address.'" Tanner, 2026 WL 2754590, at *4 (quoting Yoon v. Lululemon USA, Inc., 549 F. Supp. 3d 1073, 1083 (C.D. Cal. 2021)).

Here, plaintiffs have failed to allege that their "contents" were intercepted. Plaintiffs argue that their search terms, page titles, pill-identifier entries, and resulting drug pages all qualified as contents because they were not "characteristics of a message" (e.g., IP addresses, device information, button clicks, and URLs of webpages), but, in fact, the messages themselves. (Opp. at 12 (Docket No. 30).) This

argument is unavailing. As IQVIA rejoinders, plaintiffs failed to allege with any specificity what their searches actually constituted beyond the generic language of "prescribed medications" and "personal health conditions." (FAC at 46-47.) Without allegations about plaintiffs' actual experience with the drugs.com site, the court cannot examine the actual content of plaintiffs' alleged search terms, page titles, pill-identifier entries, and resulting drug pages to assess "how much information would be revealed" by their disclosure. Hammerling, 615 F. Supp. 3d at 1092. Indeed, the closest plaintiffs comes to alleging the specific facts necessary for a CIPA § 631(a) claim come through a hypothetical search for Lorazepam. (FAC at 29-39.) This hypothetical is tied to neither named plaintiff, and, necessarily, cannot make a prima facie CIPA § 631(a) claim.

Accordingly, plaintiffs' CIPA § 631(a) claim is dismissed, with leave to amend.

B. CDAFA Cal. Penal Code § 502 (Count III)

CDAFA prohibits "[k]nowingly and without permission access[ing] or caus[ing] to be accessed any computer, computer system, or computer network." Torres v. Seatgeek, Inc., No. 25-CV-07118-LB, 2026 WL 1495202, at *7 (N.D. Cal. May 28, 2026); (quoting Perkins v. LinkedIn Corp., 53 F. Supp. 3d 1190, 1217 (N.D. Cal. 2014) (quoting Cal. Penal Code § 502(c)(7))). Under CDAFA, civil plaintiffs must have "suffer[ed] damage or loss by reason of a violation." Doe v. Meta Platforms, Inc., 690 F. Supp. 3d 1064 (N.D. Cal. 2023) (quoting Cal. Penal Code § 502(e)(1)). Plaintiffs argue two damage or loss theories: unjust enrichment and harm to their devices. (Opp. at 7-8.)

First, plaintiffs argue that IQVIA should be compelled to disgorge the profits unjustly earned through taking their data; they do not argue that they would have sold their data themselves. (Opp. at 30.) In Tanner, the court recently found that "loss of data or the right to control one's data is not a [damage or loss] within the meaning of the CDAFA." Tanner, 2026 WL 2754590, at *7 (citations omitted). IQVIA's "benefiting from the plaintiff's data does not mean that [plaintiffs] suffered a loss." Torres, 2026 WL 1495202, at *7.[1] Accordingly, plaintiffs' unjust enrichment theory is not viable to confer standing under CDAFA.

Second, plaintiffs' harm-to-device theory also fails under CDAFA. On this theory, plaintiffs first argue that IQVIA's software occupied storage space without authorization and used computer resources of plaintiffs' devices by embedding a "persistent cookie on each [p]laintiff's phone for 400 days." (FAC ¶¶ 66-67, 156.) However, courts dismiss CDAFA claims where plaintiffs only plead in conclusory terms that a cookie was embedded in their system without alleging any "measurable decrease in storage, memory, or any other impairment to their computing devices' functioning." Doe v. Tenet Healthcare Corp., 789 F. Supp. 3d 814, 845-47 (E.D. Cal. 2025). Plaintiffs here

---

[1] Moreover, unlike in Rodriguez v. Google LLC, which relying upon Brown v. Google LLC, 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023), found at the summary judgment stage that a "disgorgement of profits" theory allowed for "damages or loss" under CDAFA because plaintiff had adequately pleaded a "stake in the value of their data" by demonstrating a defined market for such data, plaintiff has not even attempted to define such a market with specificity. 772 F. Supp. 3d 1093, 1110 (N.D. Cal. 2025).

have failed to concretely describe how IQVIA's embedding a cookie on their system -- even for 400 days -- negatively impacted their storage, device memory, or any other aspect of device functionality. (FAC ¶ 66-67.) A mere allegation that a cookie was embedded for a defined duration is not sufficient to show the harm that CDAFA requires. See Tenet Health Corp., 789 F. Supp. 3d at 845; see also Doe I v. Google LLC, 741 F. Supp. 3d 828, 846 (N.D.Cal. 2024) (finding that plaintiffs failed to plead "allegations of lost storage, disk space, and performance" and that "it is not obvious how the presence on one's computer of the cookies from the providers' websites would result in any cognizable reduction in storage, disk space, or performance.")

On this harm-to device theory, plaintiffs also argue that they lost control over their personal data; that IQVIA's software "caused data to be output from [plaintiffs'] devices." (FAC ¶ 156.) However, "CDAFA's private right of action contemplates some damage to the computer system, network, program, or data contained on that computer, as opposed to data generated by a plaintiff while engaging with a defendant's website." Heiting v. Taro Pharms. USA, Inc., 709 F. Supp. 3d 1007, 1021 (C.D. Cal. 2023). Therefore, any output or data generated by plaintiffs' activity and then allegedly sold by IQVIA is, by extension, not damage to plaintiffs' own system.

Accordingly, plaintiffs' CDAFA claim is dismissed, with leave to amend.

C. UCL Cal. Bus. & Prof. Code § 17200 (Count V)

Plaintiffs' UCL claim fails for lack of statutory standing. The UCL prohibits any "unlawful, unfair or fraudulent

business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. To have standing, a UCL plaintiff must have "'lost money or property to have standing to sue,' which requires the plaintiff to [show] 'some form of economic injury.'" Tanner, 2026 WL 2754590, at *8 (quoting Tenet Healthcare Corp., 789 F. Supp. 3d at 814 (E.D. Cal. 2025); see Cal. Bus. & Prof. Code § 17204. In their FAC, plaintiffs state in conclusory terms that they "suffered injury in fact and lost money or property [under the UCL], including but not limited to valuable consideration, e.g., access to their private and personal data," and that their data "has monetary value," which IQVIA deprived them of without "just compensation." (FAC ¶ 176.) Plaintiffs nowhere describe this "monetary value" nor how they "lost money." Id. Plaintiffs only briefly gesture at a market for their data by describing that their data has a "recognized market value" based on a "multibillion-dollar data business." (Opp. at 8, 19.)

Moreover, IQVIA's ability to "profit from plaintiffs' data does not mean plaintiffs 'lost money or property' as a result." Tanner, 2026 WL 2754590, at *9 (Dellasala, 2026 WL 1138358, at *10). "Theft or 'unauthorized release of personal information' [does not] qualify as lost money or property for purposes of determining standing under the UCL." Tanner, 2026 WL 2754590, at *8 (quoting Jackson v. Loews Hotels, Inc., No. ED CV 18-827-DMG-JCX, 2019 WL 6721637, at *4 (C.D. Cal. July 24, 2019) (citations omitted); see In re Facebook Priv. Litig., 572 F. App'x 494 (9th Cir. 2014) (affirming the lower court's decision which had rejected a theory of lost property to confer standing

under the UCL); Tash v. Vision Serv. Plan, No. 2:25-CV-00762-DJC-JDP, 2026 WL 1012680, at *6 (E.D. Cal. Apr. 14, 2026).

Plaintiffs have not shown the economic injury necessary for a UCL claim; the claim is dismissed with leave to amend.

D. Invasion of Privacy, Cal. Const. art. I, § 1 and Common Law Intrusion Upon Seclusion (Counts IV and VI)

Plaintiffs bring an invasion of privacy claim under the California Constitution as well as a common law intrusion upon seclusion claim. Cal. Const. art. I, § 1.

To bring an intrusion upon seclusion claim, plaintiffs must show that defendant "intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy[,]" and that the intrusion "occur[red] in a manner highly offensive to a reasonable person." In re Facebook, Inc. Internet Tracking Litig., 956 F.3d at 601. Similarly, to bring an invasion of privacy claim under the California Constitution, plaintiffs must show that "(1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is 'so serious ... as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive.'" Tanner, 2026 WL 2754590, at *8 (quoting Garcia, 825 F. Supp. 3d 1at 1169); Cal. Const. art. I, § 1. Both claims require the court to determine where plaintiffs maintained a reasonable expectation of privacy and whether IQVIA's intrusion was highly offensive.

In assessing whether a plaintiff has alleged a reasonable expectation of privacy, courts examine whether "defendant gained 'unwanted access to data by electronic or other

covert means, in violation of the law or social norms" by "considering a variety of factors, including the customs, practices, and circumstances surrounding a defendant's particular activities." In re Facebook, Inc. Internet Tracking Litig., 956 F.3d at 601-02 (quoting Hernandez v. Hillsides, Inc., 47 Cal.4th 272, 97 Cal.Rptr.3d 274, 211 P.3d 1063, 1073 (2009)). Accordingly, whether it is plausible that plaintiffs would "reasonably expect" IQVIA to both collect and share with third parties detailed personal information necessarily turns on the mechanics of their specific interactions with drugs.com, the content of their searches, and the nature of the information itself. Id.

In support of finding a reasonable expectation of privacy, plaintiffs argue that their data is inherently sensitive: "Few things are more private than which prescription drugs a person takes and why." (Opp. at 9.) However, as discussed, plaintiffs have not alleged facts that show what IQVIA took concerning "[plaintiffs'] own prescribed medications and health conditions, the titles of the drug pages they opened, and the imprints of their pills." (Opp. at 8.) On this score, the court finds apt the Harrill court's reasoning that "given the limited factual allegations in [plaintiffs'] operative complaint, the court does not find [plaintiffs have] sufficiently alleged that [their] browsing activity pertains to [their] own medical information." Harrill, 2025 WL 1635428, at *7 (citing B.K. v. Eisenhower Med. Ctr., 721 F. Supp. 3d 1056, 1064, 1067 (C.D. Cal. 2024) (finding that plaintiffs "fail[ed] to allege what, if any medical information or medical records were transmitted or

disclosed," such that the court could "only interpret that [p]laintiffs used [d]efendants' [w]ebsite for routine medical searches and inquiries")).

Indeed, plaintiffs have only alleged in conclusory terms that they used a public website, drugs.com, without an account, to enter searches for conditions and prescription drugs and that such public searches were necessarily connected to their person. Without sufficiently pled facts about the medical information collected and the named plaintiffs' specific interactions with drugs.com, the court cannot determine whether plaintiffs maintained a reasonable expectation of privacy.

Moreover, for the court to determine that IQVIA's alleged intrusion constituted an egregious breach of social norms such that the breach was highly offensive, "plaintiffs must allege specific private information upon which a defendant intruded." Wright v. TrueCare Prop. Holdings, LLC, No. 3:25-CV-00786-JES-BLM, 2025 WL 3248749, at *4 (S.D. Cal. Nov. 21, 2025); see Jones v. Tonal Systems, Inc., 751 F.Supp.3d 1025, 1043 (S.D. Cal. 2024) (holding that "plaintiff's allegations lack the requisite specificity to indicate the existence of a legally protected privacy interest or a sufficiently serious breach thereof.") Although plaintiffs here allege more than in Wright and Jones, they nonetheless fail to describe the health information at issue beyond generic phrases such that the court cannot determine whether the alleged collection and disclosure amounted to a highly offensive breach.

Accordingly, plaintiffs' intrusion upon seclusion and invasion of privacy claims are dismissed with leave to amend.

IT IS THEREFORE ORDERED that defendants' motion to dismiss (Docket No. 28) be, and the same hereby is, GRANTED. The First Amended Complaint (Docket No. 25) is hereby DISMISSED without prejudice.

Plaintiffs have twenty-one (21) days from this Order's filing date to file an amended complaint if they can do so consistent with this Order.

Dated: November 12, 2026

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE